# CHARLESTON.

## THOMAS *v.* STATE BOARD OF HEALTH.

Submitted September 17, 1913.    Decided September 24, 1913.

(Opinion filed October 7, 1913.)

1. PHYSICIANS AND SURGEONS—*Licensing—Regulation by State Board of Health.*

   Sec. 9, Ch. 150, Code, as amended and re-enacted by Ch. 66, Acts of 1907, vests "The State Board of Health of West Virginia" with discretion to make reasonable rules and regulations respecting the granting of license to medical licentiates of other states with whose licensing authorities it has established reciprocal relations, and to refuse to grant license to those who have not complied with such rules and regulations. (p. 777).

2. SAME.

   A rule or regulation which requires a foreign medical licentiate to reside and practice his profession in the state which licensed him for one year before making application for license in this state, is reasonable, and the failure of the applicant to comply with it will justify the state board of health in refusing him a license. (p. 778).

3. SAME—*Licensing—Regulation by State Board of Health—Construction.*

   The year's practice in the foreign state must be in compliance with its laws. (p. 779).

4. SAME.

   The interpretation given by said board to a rule or regulation adopted by it will be followed by the court unless it appears to be clearly unreasonable and arbitrary. (p. 780).

Original application for a writ of mandamus by Claude A. Thomas against the State Board of Health.

*Mandamus Refused.*

*M. F. Stiles* and *McCluer & McCluer,* for petitioner.

*A. A. Lilly,* Atty. Gen., *John B. Morrison* and *J. E. Brown,* Assistant Attorney General, for respondent.

WILLIAMS, JUDGE:

Dr. Claude A. Thomas has made original application to this

court for a writ of mandamus to compel the State Board of Health of West Virginia to issue him a license to practice medicine in this state.

Petitioner avers that he is a resident of the state of Maryland; that about the 6th of June, 1912, he was graduated from the Maryland Medical College of Baltimore, a reputable medical college in good standing in Maryland and in this State; that after receiving his college diploma the Board of Medical Examiners of the State of Maryland issued to him on the 24th of July, 1912, a license to practice medicine and surgery in that state, and that thereupon he immediately entered upon, and has ever since been continuously engaged in, the reputable practice of medicine in that state; that the standard of qualification to practice medicine in Maryland is equivalent to the standard in West Virginia, and that each of said states accords to the medical licentiates of the other like privileges; that the board of health of West Virginia has heretofore established and maintained reciprocal relations in the said matter with like authorities in the State of Maryland, and has granted to graduates of said Maryland Medical College and licentiates of the Board of Medical Examiners of Maryland licenses to practice medicine in this state; that on the ―― day of July, 1913, he made proper application to the State Board of Health of West Virginia, on blank forms furnished for the purpose by said board, setting forth therein the foregoing facts, for license to practice medicine in West Virginia, and accompanied said application with the license issued to him by the Board of Medical Examiners of the State of Maryland and with the affidavits of nine reputable citizens and residents of Baltimore, Maryland, testifying to petitioner's good character and to the fact that he had practiced medicine in Baltimore for one year prior thereto, and also tendered with his application $25.00 to pay the fee required by Sec. 11, Ch. 66, Acts 1907; and that said State Board of Health, at a regular session held in the city of Charleston on the 4th of August, 1913, refused to grant him a license, which action petitioner alleges was unjust, arbitrary and contrary to the express terms of the statute and greatly to his wrong and prejudice.

On this petition an alternative writ was issued, to which "The State Board of Health of West Virginia" has made return,

admitting its refusal to grant petitioner license and assigning a number of reasons therefor, only one of which, however, we need consider, deeming it a sufficient justification for respondent's action in the premises; that is, that under the reciprocal relation existing between respondent and the medical examining board in the State of Maryland, a medical licentiate from that state is required, by a rule or regulation adopted by respondent prior to petitioner's application, to reside and practice his profession in Maryland for one year after receiving his license there and before making application for license here, which regulation it appears petitioner has not complied with. It may not be that respondent is given an unlimited discretion in the matter of granting or refusing licenses to applicants therefor, still, in view of the very nature of its duties and powers, as prescribed and defined by chapter 150, Code of West Virginia (1906), it must necessarily be vested with a very wide discretion, and especially so in the matter of establishing reciprocal relations between itself and like bodies in other states, having similar powers, and in prescribing regulations for the granting of licenses to licentiates from such other states. Section 3 of said chapter authorizes it to "make and adopt all necessary rules, regulations and by-laws not inconsistent with the constitution and laws of this state or of the United States, to enable it to perform its duties and transact its business under the provisions of this chapter." Section 9 of said chapter, as amended and re-enacted by chapter 66, Acts 1907, clearly gives it power to fix the standard of qualification for practitioners of medicine, by empowering it to examine the applicant in respect thereto, before issuing him a license, and by authorizing it to determine what medical colleges are reputable, in its judgment, and what ones are not. It also has discretion to enter into reciprocal relations with like boards in other states, whose standards of qualification are equal to that established by it in this state, and to admit licentiates of those states to practice in this state, without subjecting them to an examination, or to refuse to enter into such relation and to require such applicants to pass an examination. It appears, however, that such reciprocal relation has been established between respondent and the board of medical examiners in the state of Maryland. Therefore, in view of its large discretion in

these matters, respondent's regulation requiring medical licentiates of the state of Maryland to reside and practice their profession in that state, continuously for one year before applying for license in this state, is a reasonable one and wholly within its discretion. The board of medical examiners of Maryland exacts a like requirement of medical licentiates from this state who make application to it for license in that state. It is a reciprocal arrangement.

The return denies that petitioner resided and practiced in Maryland for a year after he had been licensed there, and before making his application for license here, and avers that during the time petitioner claims to have resided and practiced in Baltimore, Maryland, he was residing in Martinsburg, West Virginia, and practicing his profession in this state without a license so to do, which respondent charges to be dishonorable conduct. Petitioner replied specially to this and other charges in the return, and a number of affidavits, pro and con, were taken and filed. But it is not necessary to decide this question of fact, or the question of law growing out of it, i. e., whether, if the charge is true, it amounted to dishonorable conduct, for the reason that petitioner admits the fact that his Maryland license was not delivered to the recording court in the City of Baltimore, where he claims to have resided and practiced, until in January, 1913, which was only seven or eight months before he made application to respondent for license. If he did, in fact, practice his profession in that state prior to filing his license for recordation, it was unlawful and could not avail him anything. Under the statutes of Maryland his license was inoperative until it was filed for recordation. Sec. 59, Ch. 217, Acts of Maryland, 1894, makes it a misdemeanor for a physician or surgeon to attempt to practice his profession in that state without first having his license registered, and subjects the violator of the law to a fine of from $10 to $200 for each offense. So solicitous is the legislature of that state regarding the enforcement of this statute that, by another act, Sec. 61A, Ch. 612, Acts 1902, it is made the duty of the police commissioners in the city of Baltimore and of the sheriffs of the various counties, to see that all practicing physicians in the state are duly registered in the respective counties in which they practice.

Respondent's regulation respecting the granting of licenses to medical licentiates from the state of Maryland was reasonable and authorized by its discretionary powers, and petitioner had not complied with it. For this reason we refuse the writ.

*Mandamus Refused.*