STATE *ex rel.* HERMAN LEWIS BALLARD

*v.*

WALTER E. VEST, *et al.*, MEMBERS OF AND CONSTITUTING THE MEDICAL LICENSING BOARD OF WEST VIRGINIA

(No. 10398)

Submitted May 29, 1951. Decided June 12, 1951.

*Goshorn & Goshorn* and *D. Jackson Savage,* for relator.

*William C. Marland,* Attorney General, *Eston B. Stephenson,* Assistant Attorney General, for respondents.

RILEY, JUDGE:

State ex rel. Herman Lewis Ballard filed this original petition for a writ of mandamus against Walter E. Vest, N. H. Dyer, W. P. Bittinger, Cecil B. Pride, Doff D. Daniel, Frank J. Holroyd, George F. Evans, E. R. Johnson, D. H. Afflack, R. E. Tripp, and F. W. Remick, as members of and constituting The Medical Licensing Board of West Virginia, seeking to command the respondents to allow relator to take the examination, as required by Section 2,

Article 2-a, Chapter 97, Acts of the Legislature, 1949, for the purpose of determining whether relator is entitled to a license to practice chiropractic in this State.

Relator's petition alleges that on March 26, 1951, relator applied to the secretary of The Medical Licensing Board of West Virginia for a license to practice chiropractic in this State; that relator was graduated from an accredited high school before he attended chiropractic school; that after graduation from high school relator attended Marshall College at Huntington during the academic years 1944-45 and 1945-46, in which institution he received forty-six and one-half hours college credit; that he then received an additional eight hours college credit for the time he served in the United States Navy; that relator then attended and was graduated from a chiropractic college recognized by the American Chiropractic Association; and that thereafter during the academic year 1950-51 he attended Marshall College and received an additional credit of fifteen hours. Relator further alleges that by letter dated April 3, 1951, The Medical Licensing Board of West Virginia informed him that he was not eligible to take the examination for the reason that the fifteen hours credit obtained by relator at Marshall College during the academic year 1950-51, "* * * was after you took your chiropractic training."

The petition further alleges that he has complied with all the provisions of Section 2, Article 16, Chapter 97, Acts of the Legislature, 1949, (Michie's Code, 1949, Chapter 30, Article 16, Section 2), which reads: "Any person wishing to practice chiropractic in this state shall apply to the secretary of the medical licensing board for a license so to practice. Each applicant shall be a graduate of a chiropractic school or college recognized by the American Chiropractic Association, or other recognized national chiropractic society, which teaches a resident course of at least three calendar years of eight months each and requires active attendance upon the same, and shall be a graduate of an accredited high school giving a four-year course or have an education equivalent to the

same, and shall have attended for at least two years an academic college equal in standing to the West Virginia university, as preliminary education."

The respondents filed a demurrer to relator's petition, stating the following grounds in support thereof: **(1)** That mandamus is not the proper remedy because relator was afforded another adequate and efficacious remedy, wherein applicant could obtain a review by the Circuit Court of Cabell County, the county of relator's residence, as provided by Code, 30-1-9; and **(2)** that it affirmatively appears from the petition that relator has not complied with the provisions of Section 2, Article 16, Chapter 97, Acts of the Legislature, 1949, in that before he attended the chiropractic college in addition to graduation from high school he had obtained only fifty-four and one-half college hours, in an academic college equal in standing to West Virginia University, whereas, sixty-four college hours for a two-year period were required before attendance at and graduation from a chiropractic college; and that the board cannot accept the fifteen hours credit which relator obtained for attendance at Marshall College after his graduation from the chiropractic college.

The respondents filed an answer, in which they admitted all the factual allegations contained in relator's petition; and further respondents answer that "* * * there has been an unbroken administrative interpretation of long standing and recognition over a period of years by the Chiropractic Board of Examiners and its successor, the present Medical Licensing Board, since the passage of Chapter 20, Acts of the Legislature, Regular Session, 1925, interpreting Section 2, concerning the qualifications prerequisite to the taking of the chiropractic examination, to mean that an applicant therefor must show that he has completed at least two years of academic college work *prior to* and *as preliminary* education to taking the graduate course at a chiropractic school or college"; that this long established interpretation by the board of said Section 2, Article 16, is "consonant with the public policy in this state and the high standards necessary to protect the

public requiring applicants for examinations for particular professions to first complete a minimum of undergraduate or academic college training or high school training as *preliminary* training *prior* to taking *graduate* training in a particular professional school, as provided by Chapter 30 of the Code of West Virginia, relating to professions and occupations [Michie's Code, Chapter 30, Article 16, Section 2]."

The basic question before this Court is whether a writ of mandamus should issue to compel the respondents, members of The Medical Licensing Board of West Virginia, to allow relator to take the examination, in view of the fact that he had the necessary high school, college and professional credits, though a necessary part of his academic college credits were obtained after his graduation from a chiropractic college.

The preliminary question presented by this record is whether mandamus is the proper remedy to review the refusal of the licensing board to grant a license to practice chiropractic. In *Hardin* v. *Foglesong*, 117 W. Va. 544, 186 S. E. 308, this Court held that a writ of mandamus will lie directed to The West Virginia Board of Embalmers and Funeral Directors to compel the board in a proper case to grant a funeral director's license. For a further reason we are of opinion that mandamus affords relator a proper remedy. With the possible ·exception of the rather cumbersome remedy of certiorari, relator has no way to obtain a judicial review of the board's finding, because he is not "A person, * * * who has been refused a license or registration for any cause other than failure to pass the examination given by the board, or whose certificate, license, registration or authority has been suspended or revoked." (Code, 30-1-9). He is simply an applicant who has been refused permission by the board's finding to take the examination for a license to practice chiropractic.

But whether the writ of mandamus prayed for should issue depends upon an interpretation of Section 2, Article

16, Chapter 97, Acts of the Legislature, 1949. Of course, in attempting to arrive at the legislative intent, as disclosed by the provisions of said Section 2, Article 16, we must take into consideration the fact that Article 16 should be construed in the light of the underlying purpose for which it was enacted, namely, the preservation of the public health. While it is the general rule that statutes in derogation of the common law, which restrict the exercise of a trade or occupation, should be strictly construed in favor of the person affected thereby *(Hardin* v. *Foglesong, supra,* pt. 2 syl.; *Rhodes* v. *J. B. B. Coal Co.,* 79 W. Va. 71, pt. 3 syl., 90 S. E. 796; *Combined Saw & Planer Co.* v. *Flournoy,* 88 Va. 1029, 14 S. E. 976; and 2 Lewis' Sutherland Statutory Construction, 2d ed., Section 537), the rule has no application in the interpretation of the statutes, such as Section 2, Article 16, which was enacted for the protection of the public health. Such statutes should be given a liberal construction to effectuate their objectives. 3 Horack, Sutherland Statutory Construction, 3d ed., Section 7202; 50 Am. Jur., Statutes, Section 395.

This record discloses that the relator has complied with all the provisions of the statute dealing with his qualification for examination before the medical licensing board, unless under the board's interpretation of Article 16, he cannot avail himself of the credits obtained at Marshall College during the academic year 1950-51, which credits were obtained after he had attended and been graduated from the chiropractic college.

Relator asserts that the order in which the educational requirements are stated in Section 2, Article 16, is determinative that the words "as preliminary education", mean that the entire education must be preliminary to examination by the medical licensing board and not preliminary to the professional education at a chiropractic college. In this regard it is to be noted that Section 2, Article 16, does not provide in the following order for: (1) Graduation from an accredited high school or the equivalent thereof; (2) attendance for at least two years at an academic college equal in standing to West Virginia

University; and (3) graduation from a chiropractic school or college recognized by the American Chiropractic Association, or other recognized national chiropractic society, "as preliminary education". If it did, relator's position would be clearly tenable.

Respondents, on the other hand, assert that as the last two clauses of Section 2, Article 16, provide, that the applicant "shall be a graduate of an accredited high school giving a four-year course or have an education equivalent to the same" and "shall have attended at least two years an academic college equal in standing to the West Virginia University, as preliminary education"; and that attendance at such college for at least two years resulting in credits of at least sixty-four hours must be preliminary to attendance at the chiropractic school or college.

The wording of Section 2, Article 16, as it bears on the question under consideration, is peculiar indeed. It is to be noted that the section reads in part that: "Each applicant shall be a graduate of a chiropractic school or college recognized by the American Chiropractic Association * * *, and shall be a graduate of an accredited high school giving a four-year course * * *, *and* shall have attended for at least two years an academic college equal in standing to the West Virginia university, *as preliminary education*." (Italics supplied).

The separation of the provision as to graduation from a chiropractic school from the provision dealing with a high school education and attendance at an academic college is indicated by the word "and" italicized, in the above-quoted portion of said section, which would seem to indicate that the Legislature intended that the closing words of said Section 2 "as preliminary education" govern the last two provisions of the quoted portion of said section. Ordinarily, if the Legislature intended that the words "as preliminary education" should govern all three requirements, the provision as to graduation from a chiropractic school or college would be separated simply by a comma, for it seems that the word "and" after the provi-

sions as to graduation from a chiropractic school or college would set off the other two requirements therefrom, and that the words "as preliminary education" would govern the two later provisions as to a high school education and attendance at a college.

Moreover, if the Legislature intended that the words "as preliminary education" were indicative that the three requirements were prerequisite to the taking of the examination, the words "as preliminary education" would have been entirely unnecessary, and the statement of the three requirements in the several provisions of said Section 2 alone would clearly indicate that the order in which the educational requirements were preliminary to the examination, no matter how or when complied with. We cannot assume in the absence of wording clearly indicating contrariwise that the Legislature would use words which are unnecessary, and use them in such way as to obscure, rather than clarify, the purposes which it had in mind in the enactment of the statute.

From a careful consideration of the language employed in Section 2, Article 16, now before us for interpretation, we are of opinion that graduation from high school or the equivalent thereof, and attendance at an academic college equal in standing to West Virginia University must precede attendance at a chiropractic school or college. In reaching this conclusion, we are supported to a large extent, as respondents' answer discloses, by the fact that there has been an unbroken administrative interpretation of long standing by the chiropractic board of examiners and its successor, The Medical Licensing Board of West Virginia, that Section 2, Article 16, provides that a high school and academic college education shall be had before attendance at and graduation from an accredited chiropractic school. In *State* v. *Davis*, 62 W. Va. 500, pt. 4 syl., 60 S. E. 589, 14 A. L. R. (N.S.) 1142, this Court held: "A contemporary exposition of a statute, uncertain in its meaning, recognized and acquiesced in, for a long period of time, by the officers charged with the duty of enforcing it, the courts, the Legislature and the people, will be

adopted unless it is manifestly wrong." See also *Thomas v. State Board of Health*, 72 W. Va. 776, pt. 4 syl., 79 S. E. 725; *State ex rel. Board of Governors of West Virginia University v. Sims, Auditor*, 134 W. Va. 428, 59 S. E. 2d 705. In point 4 of the syllabus of the *Thomas* case, this Court held: "The interpretation given by said board to a rule or regulation adopted by it will be followed by the court unless it appears to be clearly unreasonable and arbitrary."

We regret that we find ourselves unable to relieve relator from the hardship caused by the ruling of the medical licensing board in interpreting Section 2, Article 16. Our duty, however, is plain. We are not here to pass on the question whether the factual ruling of the medical licensing board is capricious or arbitrary: we simply hold that the medical licensing board in refusing relator admission to the examination for a license to practice chiropractic in this State on the basis of its interpretation of Section 2, Article 16, as disclosed by its letter of April 3, 1951, was correct in its interpretation of the statute.

For these reasons we are of opinion that the writ of mandamus prayed for should be denied.

*Writh denied.*