STATE OF WEST VIRGINIA BY C. S. DAVIS,
*Director of Employment Security*

*v.*

M. H. HIX, *Clerk, et al.*, ISLAND CREEK
COAL CO., *Employer*

(No. 10713)

Submitted September 20, 1955. Decided December 6, 1955.

GIVEN, JUDGE, dissenting.

*John G. Fox,* Attorney General, *Robert F. Thompson,* Assistant Attorney General, *Leo Loeb,* General Counsel, for petitioner.

*F. Paul Chambers,* for respondent.

LOVINS, PRESIDENT:

This proceeding comes here on writ of certiorari sued out by C. S. Davis, Director of Employment Security, hereinafter designated as director, against the Board of Review of the West Virginia Department of Employment Security, hereinafter designated as board; E. A. Hansbarger, Chairman of the West Virginia Department of Employment Security; W. A. Mitchell and Henry A. Walker, members of the Board of Review, hereinafter designated as chairman and members respectively; the Island Creek Coal Company, hereinafter designated as employer; and John Blaskewiecz, claimant, who will be hereinafter referred to as claimant.

The claimant was employed by the employer as a

general laborer. He was separated from employment on the 4th day of April, 1952, as a consequence of a general reduction in the labor force.

Claimant filed his claim on April 4, 1952, and commencing on April 9, 1952, was paid unemployment compensation benefits until August 12, 1952, such payments aggregating the sum of $425.00. In the meanwhile he filed his application for old age benefits July 21, 1952, under Title II of the Federal Social Security Act.

He received his first payment under Title II of the Social Security Act on or about the 3rd day of September, 1952.

Claimant also applied for a miner's pension during the second week of April, 1952 and received $100.00 per month from the United Mine Workers of America Welfare and Retirement Fund for the months of July, August and September, 1952.

The initial claim was allowed by the deputy director as above stated. No written decision however was filed by him. It is indicated however that the deputy sent to the employer Form T3 advising the employer that the claimant had made claim for maximum unemployment compensation benefits. The notice so sent to the employer did not definitely state that the claimant was eligible, that he was not disqualified, or that benefits would be paid. On the reverse side of the notice so sent to the employer, certain printed instructions appear indicating that if the employer knew of any reason for disallowance of compensation benefits, it should be noted thereon and filed with the Department of Employment Security.

No action was taken by the employer until sometime in August, 1952.

On the 28th day of August, 1952, the deputy director, at the request of the employer, rendered a decision that the claimant was available for full time employment for

which he was fitted by prior training and experience as of August 12, and therefore, eligible for benefits without disqualification. The claimant ceased filing continued claims for unemployment compensation benefits on and after August 27, 1952.

The trial examiner, acting as an appeal tribunal, upon consideration of the record, held that the claimant was not entitled to any unemployment benefits. Such action of the tribunal was appealed to the board. The board held that he was entitled to compensation to and including August 12, 1952. The employer applied for and obtained an appeal and judicial review of the board's order.

The Circuit Court of Kanawha County reversed the action of the Board and remanded the proceeding for further action.

It is to be noted that according to the opinion of the Circuit Court of Kanawha County, made a part of the record, only one question was decided by that Court. Should the deputy director have made a written decision at the inception of the claim? No other questions were passed on.

On the petition of the director, this Court granted a writ of certiorari to review the judgment of the Circuit Court of Kanawha County. Two questions are raised by this petition: (1) Does the statute require that the deputy director prepare and file a written statement of his reasons? (2) Was the claimant available for full time work for which he was fitted by prior training and experience at the time of the filing of his initial claim.

The rights of the claimant and the employer; the authority and power of the director and the board rest entirely on the applicable statute, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended. That act has been amended numerous times. Section 2 of the original act authorizes the citation thereof as "Unemployment Compensation Law". Such citation will be hereinafter used.

The director cites numerous cases to uphold the principle of administrative and contemporaneous construction of the statute.

Where the language of the statute is of doubtful meaning or ambiguous, rules of construction may be resorted to and the construction of such statute by the person charged with the duty of executing the same is accorded great weight. *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690. See *State* v. *Davis,* 62 W. Va. 500, 60 S. E. 584; *Thomas* v. *State Board of Health,* 72 W. Va. 776, 79 S. E. 725; *Brandon* v. *Board of Control,* 84 W. Va. 417, 100 S. E. 215; *State* v. *Sims, Auditor,* 134 W. Va. 428, 433, 59 S. E. 2d 705; *Ballard* v. *Vest and Others,* 136 W. Va. 80, 65 S. E. 2d 649; *State ex rel.* v. *Kan. Co. Court,* 137 W. Va. 127, 70 S. E. 2d 260. But before any rules of construction should be applied to a statute, it must be ambiguous or of doubtful meaning. *McLaughlin* v. *Morris,* 128 W. Va. 456, 461, 37 S.E. 2d 85; *Unemp. Com.* v. *Casualty Co.,* 130 W. Va. 147, 156, 42 S. E. 2d 820; *Raynes* v. *Pencil Co.,* 132 W. Va. 417, 419, 52 S. E. 2d 248. As to what constitutes an ambiguity, see 50 Am. Jur., Statutes, §226.

Article 7, Section 3 of the Unemployment Compensation Law provides that the director shall appoint deputies to investigate and originally determine all claims for benefits. Article 7, Section 4 of the Unemployment Compensation Law provides as follows: "A deputy shall promptly investigate a claim and shall, after the establishment of the facts, determine whether or not such claim is valid, and, if valid, shall determine: (1) The week with respect to which benefits will commence; (2) The amount of benefit; (3) The maximum duration of benefits.

"After determination, the deputy shall promptly notify the claimant and the last employer of his findings and decision."

Article 7, Section 8 of the Unemployment Compensa-

tion Law provides in part as follows: "A claimant, last employer, or other interested party, may file an appeal from the decision of the deputy within eight calendar days after notice of the decision has been delivered or mailed by registered mail to the claimant and last employer as provided in section four * * * of this article * * * ".

The words of the statute quoted above are plain in meaning and without ambiguity. They require a decision by the deputy in writing and that such decision be delivered or sent by registered mail to the claimant and last employer. This was not done in this instance.

The director argues that Form T3 on the reverse side of which is printed certain instructions provides sufficient notice to the employer and that it has been the practice and procedure of the Department of Employment Security to handle claims for such compensation in the manner indicated by this record. But that does not comply with the statute. We therefore conclude that non-compliance with the statute renders illegal the charge of the amount of compensation paid claimant to the merit rating account of the employer.

We are cited cases from other jurisdictions which seem to indicate that the procedure adopted by the Department of Employment Security is correct, but we prefer to base our conclusion solely on the applicable statute, which in plain and unambiguous terms, requires that a deputy make a decision and forward it by delivery or registered mail as above noted.

The foregoing disposes of the sole question decided by the Circuit Court of Kanawha County.

This however does not fully dispose of the questions fairly raised on the record. It is to be noted that this case is here on a writ of certiorari, as required by Article 7, Sections 27 and 30 of the Unemployment Compensation Law, as amended.

A writ of certiorari is somewhat different from an appeal and writ of error. Code, 53-3-2 provides: "In every case, matter or proceeding, in which a certiorari might be issued as the law heretofore has been, and in every case, matter or proceeding before a county court, council of a city, town or village, justice or other inferior tribunal, the record or proceeding may, after a judgment or final order therein, or after any judgment or order therein abridging the freedom of a person, be removed by a writ of certiorari to the circuit court of the county in which such judgment was rendered, or order made; except in cases where authority is or may be given by law to the circuit court, or the judge thereof in vacation, to review such judgment or order on motion, or on appeal, writ of error or supersedeas, or in some manner other than upon certiorari; * * * ".

Code, 53-3-3 provides that the circuit court shall " * * * review such judgment, order or proceeding, of the county court, council, justice or other inferior tribunal upon the merits, determine all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter as law and justice may require * * * ".

In the first point of the syllabus in *Alderson* v. *Commissioners*, 32 W. Va. 454, 9 S. E. 863, this Court said: "Upon a writ of *certiorari* used as an appellate proceeding to bring to the Circuit Court for review a judgment or order of an inferior tribunal, the Circuit Court should decide all matters of law and fact, including those on the merits fairly arising on the record, either affirming such judgment or order, or reversing or modifying it, and should render such judgment, as the inferior tribunal should have rendered, or remand it to that tribunal, where further proceedings are necessary with distinct decision on the points involved in the latter event."

In this jurisdiction circuit courts, upon certiorari, review matters of law and fact and make such disposition of a case as " ' law and justice may require ' ". *Copley* v.

*Trent,* 117 W. Va. 768, 188 S. E. 138.    See *Taxi Co.* v. *Hudson,* 103 W. Va. 173, 136 S. E. 833.

Varying uses have been made of the writ of certiorari in other jurisdictions.   We have examined decided cases in other jurisdictions, but we are controlled by the statutes above noted and cases decided by this Court. Hence, the citation of decisions from other states would serve no useful purpose.

In compliance with our own statutes and decisions, we think the question of disqualification or eligibility of the claimant arises on the record.   It is shown that the claimant made application for old age pension under Title II of the Federal Social Security Act; that he made application for an allowance by the United Mine Workers of America Welfare and Retirement Fund.   Such action on the part of the claimant raises the question whether he was eligible or qualified for unemployment compensation benefits.   Moreover, if he is ineligible or disqualified, when did such ineligibility arise or disqualification take place?   Those questions should have been decided by the trial court.   This Court should not decide questions which have not been decided by the trial court.

Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

This proceeding is remanded to the Circuit Court of Kanawha County, with directions to pass on the questions above stated.

> *Affirmed;*
> *remanded with*
> *directions.*

GIVEN, JUDGE, dissenting:

The claimant filed his claim on April 9, 1952, and was paid unemployment compensation from that date to August 12, 1952.   The employer was notified of the filing of the claim, and of certain actions thereon, by Department Forms B-6, B-6A and T-3.   Form B-6 "required"

the employer to complete and return the form if it knew "any reason" why the claim should not be paid, and advised the employer that the "claim may be considered payable unless this form is returned to the local office shown below within ten days from the date this claim is filed", and unless reasons be shown why the claim should not be paid. Form T-3 "is actually a notice to the employer of a charge to his account" and, of course, potential notice that any future payments on that particular claim would be charged to its experience rating account. Form T-3 is mailed to the employer "any time a claim is filed indicating the claimant is entitled to benefits so far as a monetary determination is concerned".

The employer ignored the receipt of Forms B-6 and B-6A and made no objections to payments and no appearance, except that it "drew up a separation notice and ran it off for them and returned it". The "separation notice" so returned by the employer showed "the name of the individual, and the office in which the claim was filed, and the date we prepared the separation notice, the date of the termination, the day last worked, and the reason for his termination".

After the appearance of the employer in August, 1952, the only objection raised by the employer, so far as the present controversy is concerned, went to the chargeability of payments previously made to the employee to the experience rating account of the employer. The actual contention, and the only contention, of the employer is that its experience rating account should not be charged with the payments made to claimant, for the reason that it was not promptly notified of a decision on the claim by a deputy, as required by Section 4 of Article 7 of Chapter 21A of Michie's 1955 Code of West Virginia.

In *Horsman Dolls* v. *Unemployment Compensation Commission*, 7 N. J. 541, 82A. 2d 177, certiorari denied 342 U. S. 890, 96 L. ed. 667, 72 S. Ct. 201, wherein a

very similar, if not precisely the same, question was discussed, the Court said: "As respects the 'decision' to which the provision for notice has reference, and the significance of the phrase 'other interested party,' subsection 6(b) is not free from ambiguity. But we shall resolve the doubt in favor of notice. In this view, the failure of notice to the plaintiff employer of the deputy's initial determination of the detached employee's eligibility for benefits did not result in substantial prejudice to plaintiff which demands that his account for rate purposes be disburdened of the benefits lawfully paid to the detached employee because of seasonal unemployment. The want of notice of the initial determination, however informal the decision, did not serve to deprive plaintiff of such remedy by appeal as the statute gave him, for plaintiff concedes that its failure to respond to the notices B-11 was the entire absence of grounds of disqualification * * * The disburdening of plaintiff's account of benefits thus lawfully paid would work serious detriment to the statutory policy of unemployment insurance without reparatory service to appellant. Administrative failures or deficiences cannot be made to serve the interests of one whose substantial rights have not been thereby invaded. The statute does not say that, for the purpose of computing the employer's contribution rate, a failure of notice of the initial determination shall, in and of itself, work a disburdenment of the employer's account of the benefits lawfully paid; and the corollary is that the employer cannot invoke the omission save as may be needed to repair the injury done to him * * * The special interest of the employer is the measurement of the payroll excise by the benefits paid; and he cannot complain of the want of due process if he is afforded a full hearing at some stage of the proceedings on the question of the validity of the charges to his account for benefits paid. The requirements of due process are satisfied if, after appropriate notice, the person charged with the excise be given an opportunity to be heard as to the validity and the amount of the levy at some point

in the proceedings before the excise becomes irrevocably fixed * * * Laches and the principle of estoppel *in pais* serve to bar the relief sought. Plaintiff knew that benefits were being paid to the separated employees, and it was well aware that, in making these payments, the Commission relied upon its failure to make known grounds of disqualification in response to the notices B-11. By plaintiff's conduct, the Commission was led to believe that the claimants were under no disqualification, and acted accordingly. Plaintiff intended that its inaction be so interpreted, for that was the fact. Plaintiff cannot now in equity and good conscience demand that, for want of the notice of the initial determination, it be disburdened of the benefits so paid * *. *". To the same effect is the holding in *Todd Shipyards Corporation v. Texas Unemployment Compensation Commission,* _____ Texas _____, 264 S. W. 2d 709.

The question raised should not be disposed of by simply saying that the wording of the statute is plain and that in effect it is mandatory. The enactment of unemployment security legislation, making provision against loss of income incident to involuntary unemployment, for the purpose of relieving the public generally of economic burdens, was primarily for a public purpose, but it was also for the personal benefit of the employee, to afford him living substance when not able to obtain work, and for the benefit of the employer, in enabling him to have valuable employees "stand-by" during times of business distress. The administration of such a policy should not be stymied by unnecessarily strict application of statutory provisions, especially at the instance of a party not injured. In the instant case, of what interest is it to the employer to have a written decision by the deputy, other than to be afforded an opportunity to appear and be heard? That, the employer in the instant case had. Having had sufficient notice through the department forms, why should the employer be permitted to take advantage of his own neglect, merely because some administrative step had not been timely taken by those

charged with the administration of the act? The employer had full knowledge of such administrative policy and practices. Its employee and principal witness testified that "prior experience has taught me that even though we request a deputy's decision we don't get them, anyhow". Moreover, the information conveyed to the employer, by the forms mentioned, that payments had been made to the employee and that the employer's experience rating account had been or would be charged with such payments, was the equivalent of notice that a decision had been rendered, and was a substantial compliance with the applicable statutory provision.

Though the majority be correct in holding the notice insufficient, it is still in error, I think, in its holding, for the reason that the limitation fixed by the statute as to the time for an appearance would not commence to run until proper notice of the decision of the deputy. This being true, the employer in the instant case could have appeared at any time within the statutory period, after receipt of a proper notice, and defended its rights, even as to payments previously made to the employee. It is academic that a person not a party to a proceeding, even a court proceeding, is not bound by any action had therein. Moreover, in the course of the hearing before the board, the question was raised as to the availability of the employee involved, a question which would have probably determined the employer's liablity on the merits, and counsel for the employer announced: "We are not going into that"; whereupon, Commissioner Walker advised: "I think we should go into that". The employer having refused to have the matter of the availability of the employee considered, the board was not, of course, required to go further into the question. Thus, the employer was afforded, and the employer refused, the very right for which he now contends. Perhaps the best answer to the whole problem appears, in so far as the instant case is concerned, when it is pointed out that the majority completely ignores what amounted to an appearance by the employer when it filed the "separation

notice" furnishing information as to "the reasons for his termination", and other pertinent information.

Believing the reasoning of the Court in the opinion in the *Horsman Dolls* case to be sound and applicable, and being of the further views indicated, I respectfully dissent.