**FILED**

**June 12, 2024**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0362, *Eldercare of Jackson County, LLC, et al., v. Rosemary Lambert, et al.*

Armstead, Chief Justice, concurring, in part, and dissenting, in part:

Respondents, Rosemary Lambert and Carolyn Hinzman, filed their complaint in this matter following the death of their father, Delmer P. Fields ("Mr. Fields"). Mr. Fields had been a resident of Petitioner Eldercare of Jackson County, LLC's ("Eldercare") facility just prior to his death. The allegations in Respondents' complaint regarding the final days of Mr. Fields's life are disturbing and heartbreaking. However, the issue in this appeal is not whether we condone Eldercare's conduct. Instead, the narrow legal issue concerns the meaning of certain statutory language and the application of this language to the allegations in Respondents' complaint. As explained herein, I disagree with the majority opinion's analysis and definition of the phrase "actual malice" contained in West Virginia Code § 15-19-7. Therefore, I respectfully dissent to the majority opinion's ruling affirming the circuit court's order denying Eldercare's motion to dismiss.[1]

The main issue in this appeal is whether Eldercare is immune from liability from Respondents' lawsuit under the COVID-19 Jobs Protection Act, West Virginia Code §§ 55-19-1 through 9 (2021) ("the Act"). In passing the Act, the Legislature found that businesses in West Virginia were reopening following the COVID-19 pandemic and that

---

[1] I concur with the majority opinion's determination that the circuit court erred by denying the motions to dismiss filed by Petitioners Dr. Irvin Snyder and Jackson General Hospital. The majority opinion properly concluded that the "factual allegations [against Dr. Snyder and Jackson General Hospital] simply do not rise to the level of conduct engaged in with 'actual malice' within the meaning of West Virginia Code § 55-19-7." Majority Opinion at 33.

1

the threat of COVID-19 related lawsuits could pose "an obstacle to efforts to reopen and rebuild the West Virginia economy and to continue to provide medical care to impacted West Virginians." W. Va. Code § 55-19-2(a)(11). Based on this concern, the Legislature stated that the purpose of the Act was to

> [e]liminate the liability of the citizens of West Virginia and all persons including individuals, health care providers, health care facilities, institutions of higher education, businesses, manufacturers, and all persons whomsoever, and to preclude all suits and claims against any persons for loss, damages, personal injuries, or death arising from COVID-19.

W. Va. Code § 55-19-2(b)(1).

The broad immunity from liability for injury or death arising from COVID-19 is specifically addressed in West Virginia Code § 55-19-4:

> Notwithstanding any law to the contrary, except as provided by this article, there is no claim against any person, essential business, business, entity, health care facility, health care provider, first responder, or volunteer for loss, damage, physical injury, or death arising from COVID-19, from COVID-19 care, or from impacted care.

The key statutory language in this appeal concerns a narrow exception to this broad immunity. West Virginia Code § 15-19-7 provides: "Excluding the provisions of § 55-19-5 and § 55-19-6[2] of this code, the limitations on liability provided in this article shall not apply to any person, or employee or agent thereof, *who engaged in intentional conduct with actual malice*." *Id.* (Emphasis added).

---

[2] West Virginia Code §§ 15-19-5 and 6 are not applicable to the instant case.

2

In examining whether Respondents' allegations against Eldercare fall within this narrow immunity exception, the majority opinion focuses on the phrase "actual malice." Its analysis consists of two main points. First, the majority opinion recognizes that this phrase is not defined in the Act. Because the Act does not define "actual malice," the majority opinion relies on Black's Law Dictionary which provides that "actual malice" is "the deliberate intent to commit an injury, as evidenced by external circumstances." Black's Law Dictionary 1146 (11th ed. 2019). Based mainly on this definition, the majority opinion held that

> West Virginia Code § 55-19-7 (2021) of the COVID-19 Jobs Protection Act provides that the limitations on liability specified in the Act "shall not apply to any person, or employee or agent thereof, who engaged in intentional conduct with actual malice." Proof of actual malice requires evidence that the person, or employee or agent acted with the deliberate intent to commit an injury, as evidenced by external circumstances.

Majority Opinion at syl. pt. 6.

I disagree with this holding and the broad definition of "actual malice" that the majority opinion adopts because it is inconsistent with (1) the plain language of West Virginia Code § 15-19-7; (2) the purpose of the Act; and (3) prior caselaw from this Court.

Reviewing the narrow immunity exception in West Virginia Code § 15-19-7 requires an examination of this Court's rules of statutory construction. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). To determine legislative intent, this Court looks at the precise language employed by the

3

Legislature. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

As an initial matter, I agree with the majority opinion that the phrase "actual malice" in West Virginia Code § 15-19-7 is not ambiguous and that its plain meaning may be applied as written. However, to properly apply the plain meaning of "actual malice," it must be considered in conjunction with the phrase immediately preceding it, i.e., the "limitations on liability . . . shall not apply to any person . . . *who engaged in intentional conduct* with actual malice." *Id.* (Emphasis added).

When this Court examines a statute, we give effect to each word employed in a legislative enactment. "It has been a traditional rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning[.]" *Keatley v. Mercer County Bd. of Educ.*, 200 W. Va. 487, 495, 490 S.E.2d 306, 314 (1997) (internal quotation and citation omitted).[3] The Legislature's use of the phrase "engaged in intentional conduct" immediately before "with actual malice" was purposeful and this Court is required to consider these phrases together. *See State ex rel. Ballard v. Vest*, 136 W. Va. 80, 87, 65 S.E.2d 649, 653 (1951) ("We cannot assume in the

---

[3] *See also* Syl. Pt. 7, *Ex parte Watson*, 82 W. Va. 201, 95 S.E. 648 (1918) ("It is presumed the legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective, wherefore an interpretation of a statute which gives a word, phrase or clause thereof no function to perform, or makes it, in effect, a mere repetition of another word, phrase or clause thereof, must be rejected as being unsound, if it be possible so to construe the statute as a whole, as to make all of its parts operative and effective.").

4

absence of wording clearly indicating contrariwise that the Legislature would use words which are unnecessary, and use them in such way as to obscure, rather than clarify, the purposes which it had in mind in the enactment of the statute.").

Engaging in *intentional conduct* means that a party had a specific intent and directed their actions purposefully to carry out a specific act.[4] "Actual malice" requires a "deliberate intent to commit an injury[.]" Black's Law Dictionary 1146 (11th ed. 2019). Based on the plain language meaning of these two phrases, I believe it is clear that West Virginia Code § 15-19-7 requires a showing that a party had a specific intent ("*engaged in intentional conduct*") to cause a deliberate injury ("with actual malice") to a specific individual. Indeed, it is unclear how a party that had a specific intent to cause a deliberate injury could do so without directing their intentional conduct toward a specific individual. This conclusion, that West Virginia Code § 15-19-7 requires a showing that party had a specific intent to cause a deliberate injury to a specific individual, is a high bar that would prevent all but the most egregious claims from being brought under the Act. As explained below, this conclusion is consistent with the purpose of the Act, as well as prior caselaw from this Court.

The Act's stated purpose is to "[e]liminate the liability of the citizens of West Virginia and all persons . . . and to preclude all suits and claims against any persons for loss, damages, personal injuries, or death arising from COVID-19." W. Va. Code § 55-19-

---

[4] Intentional means "done with the aim of carrying out the act." Black's Law Dictionary 1146 (11th ed. 2019).

2(b)(1). Because the purpose of the Act is to eliminate liability for all suits and claims arising from COVID-19, it follows that the immunity exception should be narrowly construed to achieve this purpose. *See* Syl. Pt. 1, *State ex rel. Holbert v. Robinson*, 134 W. Va. 524, 59 S.E.2d 884 (1950) ("A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts."). However, the majority opinion's expansive definition of "actual malice" permits a party to bring a claim by utilizing "external circumstances." As illustrated by the facts of the present case, allowing a party to bring a lawsuit under the Act by demonstrating "actual malice" through the use of "external circumstances" fails to account for the phrase "engaged in intentional conduct" in West Virginia Code § 15-19-7.

Respondents' complaint is largely comprised of external circumstances alleging that Eldercare failed to take certain actions in response to COVID-19. The complaint alleges that Eldercare failed to properly test its residents for COVID-19; did not implement proper safety measures despite the fact that it knew it had a COVID-19 outbreak; threatened employees who it feared would be potential whistleblowers; and lied to the government, health department and families about the steps it was taking in response to COVID-19. Again, while I do not condone such conduct, if proven, it does not constitute "intentional conduct with actual malice." In essence, Respondents argue that Eldercare's

6

failure to act resulted in harm and that Eldercare actively attempted to cover up these failures. Respondents do not allege that Eldercare specifically intended to cause a deliberate injury to Mr. Fields. These allegations are not sufficient under the plain language of West Virginia Code § 15-19-7 to fit into the narrow immunity exception ("engaged in intentional conduct with actual malice"). The Legislature could have included a party's *failure to act* in response to COVID-19 within the narrow immunity exception in West Virginia Code § 15-19-7. It chose not to do so. However, the majority opinion's holding permits Respondents' lawsuit against Eldercare to fall under the definition of "actual malice." This ruling expands the scope of the immunity exception beyond the plain language contained in West Virginia Code § 15-19-7 and opens the door to a wider variety of claims that parties can bring under the Act.

Perhaps recognizing that its holding could open the door to such additional claims, the majority opinion provides that "actual malice" does not encompass "conduct engaged in with 'conscious, reckless and outrageous indifference.'"[5] Despite this statement, it appears to me that under the majority opinion's holding, an allegation that a party engaged in reckless conduct, rather than intentional conduct with actual malice, can satisfy the immunity exception in West Virginia Code § 15-19-7. The facts of the instant case demonstrate this point.

---

[5] Majority Opinion at 26.

7

The distinction between (1) reckless conduct or indifference and (2) engaging in intentional conduct with actual malice is central to the instant case. I believe that Respondents' allegations, largely involving Eldercare's failure to act and take proper safety precautions in response to COVID-19, are akin to reckless conduct or indifference. Because Respondents have not alleged that Eldercare specifically intended to harm Mr. Fields, I do not believe these allegations support a finding that Eldercare engaged in intentional conduct with actual malice. One legal treatise examining the difference between these two concepts noted that

> [t]he formulation of the liability standard set forth in the Restatement of Torts 2d . . . distinguishes between malice or evil motive, on the one hand, and reckless indifference to the rights of others, on the other hand. *Malice or evil motive typically involves an intentional act coupled with a desire to harm the plaintiff.*

§ 4:9, 1 Stein on Personal Injury Damages Treatise § 4:9 (3d ed.) (emphasis added). While malice typically involves an intentional act with a desire to harm a specific person, reckless indifference means the "[c]onscious disregard of the harm that one's actions could do to the interests or rights of another." Black's Law Dictionary (11th ed. 2019). Thus, Respondents' allegations against Eldercare, that it failed to act, not that it committed intentional acts with a desire to harm Mr. Fields, can properly be characterized as reckless, rather than intentional acts committed with actual malice.[6]

---

[6] Federal courts have examined similar complaints alleging defendants failed to act and take proper remedial measures in response to COVID-19. These cases are considered

(continued . . .)

Further, while this case presents an issue of first impression, I believe that the majority opinion's new syllabus point is not consistent with our prior caselaw addressing "actual malice." This Court has mostly addressed "actual malice" in two areas: punitive damages related to bad faith claims and defamation and libel claims. In *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W. Va. 323, 352 S.E.2d 73 (1986), this Court

---

under the Public Readiness and Emergency Preparedness Act (PREP Act), 42 U.S.C. § 247d to § 247d-10, and involve different considerations that are not present in the instant case. However, the rationale in these cases addressing whether a claim that a party failed to take proper remedial measures in response to COVID-19 can provide guidance on the issue before us. By way of brief background, the PREP Act goes into effect when the Department of Health and Human Services Secretary declares a public health emergency. 42 U.S.C. § 247d-6d(b). The Act provides that covered persons "shall be immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The only exception to PREP Act immunity is a claim "for death or serious physical injury proximately caused by willful misconduct." *See Cannon v. Watermark Retirement Cmtys., Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022) (noting that willful-misconduct claims are the sole exception to PREP Act immunity). The PREP Act defines willful misconduct as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1). In one federal case with similar allegations to the instant case, the plaintiff asserted that the nursing home defendants failed to properly quarantine new admissions and residents upon their arrival; did not follow basic infection prevention procedures, such as wearing masks and washing hands; deliberately falsified the results of the testing of residents for COVID-19, hiding the fact that other residents had tested positive; and failed to properly test their employees who came into contact with residents and forced employees to work when they exhibited symptoms of COVID-19. *Friedman v. Montefiore*, 610 F. Supp. 3d 1032, 1036 (N.D. Ohio 2022). The district court noted that "while the complaint alleges that defendants 'intentionally hid the fact that other patients and/or residents' had tested positive for the virus, and this *resulted* in residents being unknowingly exposed, the complaint does not allege that defendants did this 'to achieve a wrongful purpose.'" *Id.*, 610 F.Supp. 3d at 1043 (emphasis in original). The district court concluded that the complaint's allegations did not satisfy the "willful misconduct" definition. *Id.*, 601 F.Supp. 3d at 1042. *See also Levert v. Montefiore Home*, No. 22-3876, 2023 WL 4536093 (6th Cir. July 13, 2023).

considered a lawsuit brought by policyholders against their insurance carrier for its refusal to pay their property damage claim. The Court concluded that the insurance company's "preconceived disposition to deny the claim . . . did not rise to the level of malice" necessary for an award of punitive damages. *Id.* at 331, 352 S.E.2d at 81. The Court explained that to satisfy the "actual malice" standard, a claimant had to demonstrate that the insurance company committed an *intentional injury directed at the specific claimant*:

> By "actual malice" we mean that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. . . . Unless the policyholder is able to introduce *evidence of intentional injury*—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury.

*Id.* at 330-31, 352 S.E.2d at 80-81.

This Court has also examined "actual malice" in libel and defamation cases and emphasized that a party must show a deliberate intent to injure another party:

> In libel actions 'malice' does not connote the mere dislike of one party for another or the intent of one party to injure another. . . . In libel law 'malice' has a much narrower definition and requires not only a deliberate intent to injure, but also an intent to injure through the publication of false or misleading defamatory statements known by the publisher or its agents to be false, or an intent to injure through publication of such defamatory statements with reckless and willful disregard for their truth.

10

*Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427, 433, 211 S.E.2d 674, 681-82 (1975) (emphasis added).[7]

In both of the foregoing examples, the "actual malice" standard requires a specific, concrete allegation that one party intentionally sought to injure another party. By contrast, the majority opinion's broad holding permits "actual malice" to be satisfied through the use of "external circumstances," without an allegation that a defendant intentionally sought to cause injury to a specific individual.

Based on all of the foregoing, I would have reversed the circuit court's order denying Eldercare's motion to dismiss because Respondents' allegations against Eldercare do not fall within the plain language of the narrow immunity exception contained in West Virginia Code § 15-19-7. Therefore, I respectfully dissent to the majority opinion's ruling which affirmed the circuit court's denial of Eldercare's motion to dismiss.

---

[7] While the circuit court based at least a portion of its analysis on our holding in *Hayseeds*, I nonetheless believe, for the reasons set forth herein, that neither the circuit court's determination of what constitutes "intentional conduct with actual malice," nor the majority opinion's definition of "actual malice," accurately captures the Legislature's intent in drafting the narrow immunity exception that is the subject of this appeal.

11