# CHARLESTON.

## Ex Parte James Watson.

### Submitted March 12, 1918.   Decided March 26, 1918.

1. CRIMINAL LAW—*Mayors—Judicial Powers—Constitutional Provisions.*

    Section 19 of Art. 8 of the Constitution authorizes and empowers the legislature to confer upon the mayors of incorporated cities, towns and villages, the jurisdiction and powers of justices of the peace of the counties in which their respective cities, towns and villages are situated, to be exercised concurrently with justices of the peace elected for such counties.   (p. 203).

2. SAME—*"Courts of Limited Jurisdiction"—Constitution.*

    Mayor's courts exercising the powers of justices of the peace, under statutes making mayors *ex officio* justices of the peace, are courts of limited jurisdiction, within the meaning of said section 19 of Art. 8 of the Constitution.   (p. 205).

3. SAME—*Mayor—Judicial Powers—Statute.*

    Under the provisions of sec. 39, ch. 47 of the Code, the jurisdiction of a mayor of a city, town or village, acting as a justice of the peace, extends to and includes cognizance of criminal offenses committed anywhere within the boundaries of the county in which his city, town or village is situated, and is not limited to the cognizance of offenses committed within the corporate limits of such city, town or village.   (p. 205).

4. SAME—*Mayors—Judicial Powers—"Within the City, Town or Village"—"Within the Same."*

    The phrases, "within the city, town or village," and "within the same," found therein, do not constitute a limitation as to the kind or class of offenses included in the criminal jurisdiction of a mayor so acting, but they limit and define the territory within which he must transact the business falling within his jurisdiction, whether it be civil or criminal in character.   (p. 203).

5. STATUTES—*Construction—Words and Phrases.*

In the interpretation of statutes, words and phrases therein are often limited in meaning and effect, by necessary implications arising from other words or clauses thereof. (p. 205).

6. SAME—*Construction—Matters Necessarily Implied.*

What is necessarily implied in a statute is as much a part of it as what is expressed. (p. 205).

7. SAME—*Construction as a Whole—Repetition.*

It is presumed the legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective, wherefore an interpretation of a statute which gives a word, phrase or clause thereof no function to perform, or makes it, in effect, a mere repetition of another word, phrase or clause thereof, must be rejected as being unsound, if it be possible so to construe the statute as a whole, as to make all of its parts operative and effective. (p. 205).

Habeas corpus by James Watson against S. A. Daniel, sheriff. 　　　　　　　　　　　　　　　　*Petitioner remanded.*

*Greever, Gillespie & Divine,* for petitioner.

*G. L. Counts, Litz & Harman,* and *Jno. T. Simms,* for respondent.

POFFENBARGER, PRESIDENT:

James Watson who is in the custody of the sheriff and jailer of McDowell County, under a jail sentence of sixty days, imposed by the mayor of the Town of Welch, acting as a justice of the peace *ex officio* of said county, for the offense of idleness or vagrancy, created by provisions of chapter 12 of the Acts of the Second Extraordinary Session of the legislature of 1917, seeks liberation from such custody by a writ of *habeas corpus,* on the ground of alleged lack of jurisdiction in the mayor of the town of Welch, to impose the sentence under which he is confined, the offense having been committed and the arrest made outside of the corporate limits of the Town of Welch, but in McDowell County in which said town is situated.

The mayor's jurisdiction, if any, is conferred by sec. 39 of ch. 47 of the Code, and the first inquiry raised is the inter-

pretation of that section. It provides that the mayor of any city, town or village ''shall be *ex officio* a justice and conservator of the peace within the city, town or village, and shall within the same, have, possess and exercise all powers, and perform all duties vested by law in a justice of the peace, except that he shall have no jurisdiction in civil cases of causes of action arising out of the corporate limits of the city, town or village.'' Legislative intention to clothe mayors with the powers and jurisdiction, both civil and criminal, of justices of the peace, is so clearly expressed as to put it beyond cavil or doubt. The statute says he shall have, possess and exercise all powers and perform all duties vested by law in a justice of the peace. There are some limitations upon his jurisdiction, but they are only territorial in character. The general terms just referred to vest in him complete civil jurisdiction of causes of action arising within the corporate limits of his city, town or village, and may carry it throughout the county, but for the limitation expressly withholding from his jurisdiction such causes of action, arising beyond the corporate limits. If the phrases, ''within the city, town or village'' and ''within the same,'' are not limitations thereof, it does. His jurisdiction of criminal cases is not limited to offenses committed within the corporate limits, in the same way, if at all. If there is such a limitation, it is effected by the use of other terms which, if intended as words of limitation respecting the place of the origin of the offense or cause of action, would restrict both the civil and criminal jurisdiction to those arising within the corporate limits. They are two prepositional phrases above referred to. The manifest purpose of their use was to define and limit the territory within which the mayor shall hold his court or personally exercise the jurisdiction conferred. Such a restriction conforms to the principle and the reasons of public policy which induced the framers of the Constitution to require justices of the peace to reside in their respective districts, notwithstanding coextensiveness of their jurisdiction with the boundaries of their counties; and upon which it was held in *Johnson* v.

*Hunter,* 50 W. Va. 52, and *Stanton-Belmont Co.* v. *Case,* 47 W. Va. 779, that a justice of the peace has no personal power, under the constitution and laws of the State, to hear and determine causes outside of his district, except in those instances in which he is specially authorized by law to do so. If there is any reason at all for such a limitation, its weight, sufficiency and merit are questions for the legislature, not the court. Some reasons for it are clearly apparent. The restriction enables a defendant in a civil action to know within what territory the mayor's office may be found, when he is acting as a justice of the peace. If not limited to the corporate boundaries of his city, town or village, he might make his process returnable anywhere in the county. It may be to the advantage of the public, that officers making arrests and persons arrested may know a person clothed with the powers of a justice of the peace may be found in any incorporated city, town or village, or that persons desiring to institute criminal proceedings may always find such an officer in any town. But for this restriction there might be, under certain circumstances, an inducement to mayors to absent themselves from their posts of duty, in the exercise of the jurisdiction of justices in other portions of the county. However slight and inconsequental these reasons may appear to be, they are amply sufficient to sustain a presumption that they may have entered into the deliberations of the legislative body, in the framing and passing of the statute. This presumption is aided and strengthened by an implication arising necessarily from the limitation imposing an express territorial restriction upon the exercise of the civil jurisdiction. If the two phrases referred to limited the jurisdiction, to the cognizance of offenses and causes of action arising within the corporate limits, the express limitation of the civil jurisdiction to the cognizance of causes of action arising therein, was altogether unnecessary. That limitation must be deemed and held to have been imposed for a purpose, and that purpose could have been nothing other than the imposition of a restriction not deemed to have been put on by any of the terms previously used. This clause cannot be interpreted as having been intended to per-

form a function already performed by other words. An interpretation of a statute or a clause thereof which gives it no function to perform, and makes it a mere repetition of another clause, must be rejected as unsound, for it is presumed that the legislature had a purpose in the use of every word and clause found in a statute, and intended the terms used to be effective. *State* v. *Harden,* 62 W. Va. 313; *Baxter* v. *Wade,* 39 W. Va. 281; *Argand Refining Co.* v. *Quinn,* 39 W. Va. 535; *Jackson* v. *Kittle,* 34 W. Va. 207. It is not unusual, in the interpretation of statutes, to find words and phrases limited in meaning and effect, by necessary implication arising from some other words or clauses. What is implied in a statute, will, deed or contract is as much a part of it as what is expressed. *United States* v. *Babbett,* 95 U. S. 334; *Hasson* v. *City of Chester,* 67 W. Va. 278; *State* v. *Harden,* 62 W. Va. 313. Construed in the light of these principles, the statute, manifestly makes the criminal jurisdiction of a mayor acting as a justice of the peace, extend throughout the county in which his city, town or village is situated, but requires him to keep his office and perform his duties, when acting as a justice, within the corporate limits of such city, town or village. This conclusion gives every word in the statute purpose and effect and harmonizes with those expressed in other decisions in which similar statutes have been construed. *Webber* v. *Hamilton,* 34 N. E. 424; *Smith* v. *Jones,* 65 Miss. 278; *Nickles* v. *Hendricks,* 19 So. 582.

Under organic laws somewhat similar to provisions found in our Constitution, courts of last resort in Mississippi, North Carolina, Texas and Wisconsin have held statutes purporting to vest the jurisdiction and powers of justices of the peace in mayors of towns, unconstitutional and void. *Haggie* v. *Stone,* (Miss.) 12 So. 253; *Town of Edenton* v. *Wool,* 65 N. C. 379; *Leech* v. *State* (Tex.), 36 S. W. 471; *Ex parte Knox,* (Tex.) 39 S. W. 670; *Attorney General* v. *McDonald,* 3 Wis. 703. The two Texas cases cited were decided by the Criminal Court of Appeals of that state. A decision by the Supreme Court of Texas, holding the exact opposite, is found in *May* v. *Finley,* 91 Tex. 352. In that

state is found the anomaly of two directly opposite holdings
by courts of last resort. In *Webber* v. *Hamilton*, 34 N. W.
424, decided by the Supreme Court of Iowa and sometimes
cited as authority for the constitutionality of a statute
similar to the one now under consideration, the constitutional
question seems not to have been raised. As to it, the opinion
is silent. As courts do not, *ex mero motu*, raise constitutional
questions, nor pass over them in silence, when properly raised
by litigants, it may well be assumed that the court did not,
in the case mentioned, pass upon the constitutionality of
the statute it construed.

Our Constitution, like those of most, if not all, of those of
the other states, provides, *eo nomine*, in Art. 8, for a court of
last resort, certain courts of original and general jurisdiction
and justices of the peace as courts of limited jurisdiction,
for the administration of justice throughout the state. Sec-
tion 19 of that article continues the existence of the Muni-
cipal Court of Wheeling, until otherwise provided by law,
and expressly vests power and authority in the legislature to
establish courts of limited jurisdiction within any county,
incorporated city, town or village, with the right of appeal
to the Circuit Court, subject to such limitations as may be
provided by law, and continues the existence of all courts of
limited jurisdiction established in any county, incorporated
city, town or village, prior to the adoption of the Constitu-
tion, until otherwise provided by law. At the date of the
adoption of the Constitution, every mayor of a city, town or
village, in the state was *ex officio* a justice of the peace. Code,
1868, ch. 47, sec. 39. The powers of the office of justice of
the peace had been annexed to the office of mayor, as far back
as 1849, at least. Code of 1860, ch. 48, sec. 6; Code, 1849,
ch. 48, sec. 6. Mayors were no doubt magistrates in Virginia,
at the early date of 1796, for an act of the General Assembly,
then passed, provided as follows: "That the magistrates of
any corporate town shall have the same power to examine
privily, and take the acknowledgment of a *feme covert* to a
conveyance, and to certify the same, as is by law given to
justices of peace of a county." Revised Code, 1819, ch. 261,
sec. 2. Mayors of towns, then, at the date of the adoption

of the Constitution were *ex officio* justices of the peace, and their courts were courts of limited jurisdiction established in cities, towns and villages, for the Constitution itself Art. 8, sec. 12, treats justices' courts as inferior tribunals, saying: "The circuit court shall have supervision and control of all proceedings before justices and other inferior tribunals, by mandamus, prohibition and certiorari." This clause has been properly construed as so defining them. *Rosin Coal Land Co. v. Martin*, 81 W. Va. 33. Having and exercising judicial powers, mayors acting as justices, were courts. Not being courts of general jurisdiction, they must have been courts of limited jurisdiction. Moreover, they fell within the well settled legal meaning of the technical terms, "court of limited jurisdiction," which the framers of the Constitution are deemed to have used advisedly. The continuance of the existence of all courts of limited jurisdiction, established in counties and incorporated cities, towns and villages, before the date of the adoption of the Constitution, by sec. 19 of Art. 8, plainly and necessarily includes mayor's courts exercising the powers of justices of the peace; and the continuance of such courts indicates the purpose and scope of the other provision authorizing the legislature to establish courts of limited jurisdiction in any county, incorporated city, town or village, for the description of the courts to be established in the clause authorizing creation of courts, after the adoption of the Constitution, is exactly the same as the description of the courts of limited jurisdiction, the existence of which was continued. Both classes are described as being courts of limited jurisdiction. Moreover, it cannot be assumed that the framers of the Constitution intended officers of the existing cities and towns to have different powers or greater jurisdiction, than like officers in cities, towns and villages to be afterwards organized and established. There was absolutely no reason for any such distinction. On the contrary, the principle of uniformity, or at least, similarity, in the powers of municipal corporations and their officers, furnishes ground of strong argument against intent to make any such difference or distinction. The clause continuing the existence of courts of limited jurisdiction, established be-

fore the date of the adoption of the Constitution, affords ample ground for distinction between this case and those involved in the decisions denying legislative power to confer the jurisdiction of justices of the peace upon the mayors of towns. If any of the Constitutions of other states, construed as denying such power, contain a similar provision, it has not been adverted to in any of the opinions. Our conclusion is, that the Constitution expressly confers power on the legislature to clothe mayors of cities, towns and villages with the powers and jurisdiction of justices of the peace.

These conclusions clearly deny the relief sought and the petitioner will be remanded to the custody of the jailer of McDowell County.

*Petitioner remanded.*