# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

No. 12-0632

**FILED**

**September 26, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JOSEPH E. JACKSON and
WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS,
Defendants Below, Petitioners

V.

JOSEPH WAYNE BELCHER,
Plaintiff Below, Respondent

Appeal from the Circuit Court of Mingo County
Honorable Michael Thornsbury, Judge
Civil Action No. 11-C-333

AFFIRMED

Submitted: September 10, 2013
Filed:  September 26, 2013

Gary E. Pullin
Nathan J. Chill
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Charleston, West Virginia
Attorneys for the Petitioners

Stephen P. New
Amanda J. Gardner
The Law Office of Stephen P. New
Beckley, West Virginia
Attorneys for the Respondent

JUSTICE DAVIS delivered the Opinion of the Court.

CHIEF JUSTICE BENJAMIN and JUSTICE LOUGHRY dissent and reserve the right to file dissenting opinions.

JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of summary judgment is reviewed *de novo*."
Syllabus point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "The standard of review applicable to an appeal from a motion to alter
or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that
would apply to the underlying judgment upon which the motion is based and from which the
appeal to this Court is filed."   Syllabus point 1, *Wickland v. American Travellers Life
Insurance Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

3.      "A cardinal rule of statutory construction is that significance and effect
must, if possible, be given to every section, clause, word or part of the statute."   Syllabus
point 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999).

4.      "In the absence of any definition of the intended meaning of words or
terms used in a legislative enactment, they will, in the interpretation of the act, be given their
common, ordinary and accepted meaning in the connection in which they are used." Syllabus
point 1, *Miners in General Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled
on other grounds by Lee-Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982).

i

5.　　Judicial decisions rendered by the Supreme Court of Appeals of West Virginia are laws of this State.

6.　　The preservation of an individual's "right . . . to receive benefits or compensation to which he or she would otherwise be entitled under . . . any other law" set forth in W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009) encompasses an individual's right of recovery recognized by a decision of this Court.

7.　　"Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." Syllabus point 2, *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983).

8.　　W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009) expressly preserves an individual's right "to receive benefits or compensation to which he or she would otherwise be entitled under . . . any other law" and operates to permit an individual to maintain a cause of action against the State and/or its employee(s) to recover for injuries allegedly caused by the provision of emergency services where the emergency services are provided by the State

or by an emergency service worker who is an employee of the State and the recovery sought

is confined to the limits of the State's liability insurance coverage.

**Davis, Justice:**

The petitioners herein and defendants below, Joseph E. Jackson (hereinafter "Mr. Jackson") and the West Virginia Department of Transportation, Division of Highways (hereinafter "DOH"), appeal from two orders entered by the Circuit Court of Mingo County. By its first order, entered March 7, 2012, the circuit court denied the motion for summary judgment filed by Mr. Jackson and the DOH, concluding that the language of W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009)[1] contemplates exceptions to the immunity that the statute provides to emergency service workers. In its second order, entered April 13, 2012, the circuit court denied the joint motion filed by Mr. Jackson and the DOH to alter or amend the court's previous summary judgment ruling. On appeal to this Court, Mr. Jackson and the DOH contend that the circuit court erred because Mr. Jackson was working as an emergency service worker at the time of the subject motor vehicle accident, and, as an emergency service worker, Mr. Jackson is entitled to immunity under W. Va. Code § 15-5-11(a). Upon a review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's orders. In summary, we conclude that W. Va. Code § 15-5-11(a) expressly preserves an individual's right "to receive benefits or compensation to which he or she would otherwise be entitled under . . . any other law" and operates to provide a limited waiver of the emergency service worker immunity provided by W. Va. Code § 15-5-11(a)

---

[1]*See* Section III, *infra*, for the text of W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009).

1

where the emergency service worker is an employee of this State and the recovery sought is confined "to the limits of the State's liability insurance coverage." Syl. pt. 2, in part, *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983).

# I.

## FACTUAL AND PROCEDURAL HISTORY

The underlying facts giving rise to the instant appeal are not disputed by the parties. In early May 2009, Mingo County, West Virginia, experienced severe storms that caused devastating flooding, mudslides, landslides, and stream blockages. Afterwards, then-Governor Joe Manchin, III, declared a State of Emergency encompassing Mingo County and other similarly-affected counties in the region. Ultimately, the State of Emergency was in place through July 10, 2009, to permit clean-up and repairs to damaged property and roadways.

On June 23, 2009, Mr. Jackson, an employee of the DOH, was operating a dump truck in Gilbert, West Virginia, and performing clean-up work pursuant to the existing State of Emergency declaration.[2] At the time of his accident with the respondent herein and

---

[2]The DOH and its employees were insured under the State of West Virginia's policy of liability insurance. *See generally* W. Va. Code § 29-12-5 (2006) (Repl. Vol. 2008).

plaintiff below, Joseph Wayne Belcher (hereinafter "Mr. Belcher"), Mr. Jackson was backing up his dump truck when he struck the front and side of Mr. Belcher's automobile. Mr. Jackson alleges that he did not see Mr. Belcher's vehicle because it was in his blind spot. Mr. Belcher claims that, as a result of the accident, he suffered neck and back injuries, and his car was totaled.

Mr. Belcher filed the instant civil action against Mr. Jackson and the DOH on June 21, 2011, alleging negligence and vicarious liability. After they answered Mr. Belcher's complaint, Mr. Jackson and the DOH then moved for summary judgment[3] claiming that they were entitled to immunity because the subject accident occurred while Mr. Jackson was serving as an emergency service worker, and W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009)[4] provides immunity to emergency service workers. The circuit court held a hearing on the summary judgment motion and initially contemplated certifying the immunity question to this Court. However, the circuit court ultimately determined certification to be unnecessary, and, in its March 7, 2012, summary judgment order, the court ruled as follows:

> The Court FINDS that the decision in *Pittsburgh Elevator* [*Co. v. West Virginia Board of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983),] would qualify as an exception to the statutory

---

[3]West Virginia Rule of Civil Procedure 56(c) permits an award of summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

[4]The text of W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009) is set forth in Section III, *infra*.

3

immunity of the above-cited statute [W. Va. Code § 15-5-11] under the "any other law" exception. While the case of *Pittsburgh Elevator* dealt with constitutional immunity, it is logical to assume that the West Virginia Supreme Court of Appeal[s] would extend it to statutory immunity. Additionally, by the language of West Virginia Code § 15-5-11, in which it carves out the possibility of exceptions, it does not appear that the statute intended to close the door on all suits against the State.

(Emphasis added).

After this ruling, Mr. Jackson and the DOH timely filed a motion to alter or amend the circuit court's judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure.[5] Thereafter, the circuit court, by order entered April 13, 2012, denied the motion to alter or amend judgment filed by Mr. Jackson and the DOH, reiterating its prior ruling in its summary judgment order and stating that "[t]he Court stands b[y] the aforementioned language in its decision to deny the Motion For Summary Judgment[.]"

Following these adverse rulings, Mr. Jackson and the DOH appeal to this Court.

---

[5]Rule 59(e) of the West Virginia Rules of Civil Procedure requires that "[a]ny motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."

4

## II.

## STANDARD OF REVIEW

The case *sub judice* comes to this Court on appeal from the circuit court's order granting summary judgment to Mr. Belcher and from the circuit court's order denying the joint motion of Mr. Jackson and the DOH to alter or amend the court's summary judgment ruling. We previously have held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). When a lower court has entered an order awarding summary judgment, we accord a plenary review to the court's ruling: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

We likewise will review the circuit court's ruling denying the motion to alter or amend its judgment *de novo* because

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

5

Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, Mr. Jackson and the DOH contend that Mr. Belcher's suit against them is barred by the immunity granted to emergency service workers by W. Va. Code § 15-5-11(a) insofar as Mr. Jackson was working as an emergency service worker at the time of his accident with Mr. Belcher. In finding that the immunity provided by W. Va. Code § 15-5-11(a) does not bar Mr. Belcher's lawsuit, the circuit court determined that this Court's prior decision in *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983), should be interpreted to permit Mr. Belcher to recover from the State's liability insurance for his injuries that were allegedly caused by Mr. Jackson.

The statute providing immunity to emergency service workers, W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009), provides that

> [a]ll functions hereunder and all other activities relating to emergency services are hereby declared to be governmental functions. Neither the state nor any political subdivision nor any agency of the state or political subdivision nor, except in cases of willful misconduct, any duly qualified emergency service worker complying with or reasonably attempting to comply with this article or any order, rule, regulation or ordinance promulgated pursuant to this article, shall be liable for the death of or injury to any person or for damage to any property as a result of such activity. *This section does not affect the right of*

6

> *any person to receive benefits or compensation to which he or she would otherwise be entitled under* this article, chapter twenty-three of this code, any Act of Congress or *any other law*.

(Emphasis added). Interpreting the "any other law" language of W. Va. Code § 15-5-11(a) as encompassing decisions of this Court, the circuit court determined that this Court's holding in *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983), applied to permit Mr. Belcher to maintain his cause of action against Mr. Jackson and the DOH. In Syllabus point 2 of *Pittsburgh Elevator*, we held, with respect to a claim of constitutional immunity, that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." *Id.*

Before this Court, the parties agree that Mr. Jackson was employed by the DOH and that he was serving as an emergency service worker at the time of the subject accident as contemplated by W. Va. Code § 15-5-11(a). *See also* W. Va. Code § 15-5-11(c)(1) (2006) (Repl. Vol. 2009) ("As used in this section, 'duly qualified emergency service worker' means: [a]ny duly qualified full or part-time paid, volunteer or auxiliary employee of this state . . . performing emergency services in this state subject to the order or control of or pursuant to the request of the state or any political subdivision thereof."). However, they disagree as to whether the statute's preservation of recovery rights that are

7

available to an individual under "any other law" permits Mr. Belcher to maintain his cause of action against Mr. Jackson and the DOH or whether they are immune from suit pursuant to W. Va. Code § 15-5-11(a).

Mr. Jackson and the DOH contend that W. Va. Code § 15-5-11(a) preserves Mr. Belcher's recovery rights that are secured by statutory law, but that this Court's prior decisions, including *Pittsburgh Elevator*, do not constitute "any other law" as contemplated by the statute. Moreover, they argue that Mr. Belcher's negligence claims do not allege "willful misconduct" by either Mr. Jackson or the DOH so as to bring the claims within the stated exception to the immunity provided by W. Va. Code § 15-5-11(a).

By contrast, Mr. Belcher agrees with the circuit court's interpretation of this unique statutory language as including this Court's judicial decisions within the phrase "any other law" because judicial decisions are laws of the state in which the tribunal sits. *Citing Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). In further support of his argument, Mr. Belcher contends that W. Va. Code § 15-5-11(a) permits him to seek recovery up to the limits of the State's insurance because W. Va. Code § 29-12-5 (2006) (Repl. Vol. 2008) authorizes the Board of Insurance to purchase liability insurance on behalf of the State to insure it against tort claims. Additionally, Mr. Belcher asserts that

8

a logical extension of this Court's prior decision in *Pittsburgh Elevator* would entitle him to seek recovery from the State's liability insurance coverage despite the statute's grant of immunity to emergency service workers because his recovery would be limited to the State's insurance coverage and would not be against the State, itself.

Central to our resolution of the instant controversy is the meaning and effect of W. Va. Code § 15-5-11(a). We previously have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). In order to fulfill a statute's legislative intent, it is necessary to give effect to every word and part of a statute in order to effectuate its true meaning. "It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979). As such, "[a] cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. pt. 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999). *Accord* Syl. pt. 7, *Ex parte Watson*, 82 W. Va. 201, 95 S.E. 648 (1918) ("It is presumed that the legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective, wherefore an interpretation of a statute which gives a word, phrase or clause thereof no function to perform, or makes it, in

9

effect, a mere repetition of another word, phrase or clause thereof must be rejected as being unsound, if it be possible so to construe the statute as a whole, as to make all of its parts operative and effective."). Simply stated, this Court is required to consider the *entire* language of a legislative enactment when presented with a case questioning the statute's meaning; we are not at liberty to selectively read a portion of the challenged statutory section and to disregard the remainder of the language employed by the Legislature. When the statute, read in its entirety, is clear and unambiguous, we apply, rather than construe, the statute. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). *Accord Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.").

In the case *sub judice*, the parties differ as to the meaning of the phrase "any other law." W. Va. Code § 15-5-11(a) employs this phrase to identify one of the sources from which an individual's right to recover has been preserved despite the statute's grant of immunity to emergency service workers. Mr. Jackson and the DOH argue that "any other law" does not include judicial decisions, while Mr. Belcher, and the circuit court, contend that "any other law" encompasses the decisions of this Court. The term "any" has not been

10

defined by the Legislature in this statute. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Grp. v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee-Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982). Therefore, we must look to the common, ordinary meaning of the term "any" to determine the intended scope of this phrase.

> We previously have determined "any" to be an inclusive term meaning "all":
>
> In common parlance, the adjective "any" refers to "'all.'" *Tracy v. Cottrell ex rel. Cottrell*, 206 W. Va. 363, 379, 524 S.E.2d 879, 895 (1999) (quoting *Harward v. Virginia*, 229 Va. 363, 366, 330 S.E.2d 89, 91 (1985)). *Accord Sussex Cmty. Servs. Ass'n v. Virginia Soc'y for Mentally Retarded Children, Inc.*, 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996) ("The word 'any' . . . is generally considered to apply without limitation."); *Cox v. Cox*, 16 Va. App. 146, 148, 428 S.E.2d 515, 516 (1993) ("The plain and unambiguous meaning of the word 'any' is one or more indiscriminately from all those of a kind." (internal quotations and citation omitted)).

*United Bank, Inc. v. Stone Gate Homeowners Ass'n, Inc.*, 220 W. Va. 375, 380, 647 S.E.2d 811, 816 (2007). Therefore, it appears that the phrase "any other law" includes law from "all" sources. One such source of law is the jurisprudence of this Court. In *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938), the United States Supreme Court explicitly recognized that "the law of the state shall be declared

11

by its Legislature in a statute *or by its highest court in a decision*."  (Emphasis added).  The Court further explained that "law in the sense in which courts speak of it today does not exist without some definite authority behind it. . . .  The authority . . . is . . . the voice adopted by the State as its own (whether it be of its Legislature *or of its Supreme Court*) . . . ."  *Erie*, 304 U.S. at 79, 58 S. Ct. at 822, 82 L. Ed. 1188 (emphasis added) (internal quotations and citation omitted).  Summarizing its decision in *Erie*, the United States Supreme Court subsequently succinctly stated that "judicial decisions are laws of the states."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555, 69 S. Ct. 1221, 1230, 93 L. Ed. 1528 (1949) (citing *Erie*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188).  In recognition of these pronouncements, we now expressly hold that judicial decisions rendered by the Supreme Court of Appeals of West Virginia are laws of this State.  Applying this holding to the facts of the case *sub judice*, we further hold that the preservation of an individual's "right . . . to receive benefits or compensation to which he or she would otherwise be entitled under . . . any other law" set forth in W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009) encompasses an individual's right of recovery recognized by a decision of this Court.

Having established that the decisions of this Court constitute "any other law" under W. Va. Code § 15-5-11(a), we now must determine whether a prior decision of this Court allows Mr. Belcher to recover under the facts of this case.  In *Pittsburgh Elevator Company v. West Virginia Board of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983), we

12

considered whether a suit could be maintained against a State agency entitled to

constitutional immunity where the recovery sought was confined to the limits of the State's

liability insurance coverage. We first observed that, although the West Virginia Constitution

bars suits against the State generally, our Constitution simultaneously secures an individual's

right to access the courts of this State to seek redress for his/her injuries regardless of the

person or entity who is responsible for causing or inflicting such harm:

> Our constitution clearly contemplates that every person who is damaged in his person, property, or reputation shall have recourse to the courts to seek the redress of his injuries. *See* W. Va. Const. art. III, §§ 9, 10, 17. *See generally Cooper v. Gwinn*, 171 W. Va. 245, [250,] 298 S.E.2d 781, 786 (1981). The fact that the wrongdoer is an instrumentality of state government should not eviscerate these constitutional rights, inasmuch as the Bill of Rights contained in article III is designed to protect people from government.

*Pittsburgh Elevator*, 172 W. Va. at 754, 310 S.E.2d at 686.

Reconciling the general grant of immunity afforded to the State by our

Constitution and the coexisting constitutional right of individuals to seek and obtain recovery

for their injuries in the Courts of this State, we observed that "[t]he paramount justification

underlying the constitutional grant of immunity is to protect the financial structure of the

State." *Id.*, 172 W. Va. at 756, 310 S.E.2d at 688 (footnote and citation omitted). Insofar as

"W. Va. Code § 29-12-5 . . . authorizes the Board of Insurance to procure liability insurance

on behalf of the State, and . . . further prohibits the insurer from whom a policy has been

13

purchased from relying upon the constitutional immunity of the State against claims or suits," we concluded that "a suit seeking recovery against the State's insurance carrier is outside the bounds of the constitutional bar to suit contained in W. Va. Const. art. VI, § 35." *Id.* (footnote omitted). This is so, we explained, because "where recovery is sought against the State's liability insurance coverage, the doctrine of constitutional immunity, designed to protect the public purse, is simply inapplicable." *Pittsburgh Elevator*, 172 W. Va. at 756, 310 S.E.2d at 689. In short, "'[w]here liability insurance is present, the reasons for immunity completely disappear.'" *Id.* (quoting *Gooden v. County Comm'n of Webster Cnty.*, 171 W. Va. 130, 132, 298 S.E.2d 103, 105 (1982)). Therefore, we held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." Syl. pt. 2, *Pittsburgh Elevator*, 172 W. Va. 743, 310 S.E.2d 675.

We find the same reasoning we employed in *Pittsburgh Elevator* applies with equal force to the issue presented by the instant proceeding. In the case *sub judice*, the immunity afforded to emergency service workers, and state agencies providing emergency services, has been granted by the Legislature's enactment of W. Va. Code § 15-5-11(a). However, in establishing this emergency service worker immunity, the Legislature correspondingly also has preserved the rights of individuals to receive compensation or benefits secured to them by law. In *Pittsburgh Elevator*, we reconciled the competing

14

constitutional rights of the State's immunity and an individual's right to access the courts to seek redress for his/her injuries by concluding that the potential injury to the State's purse by allowing the maintenance of a suit against the State is no longer a concern where the recovery sought is not from the State, itself, but from the State's insurance coverage. *See Pittsburgh Elevator*, 172 W. Va. at 756, 310 S.E.2d at 689. Here, applying our prior holding in *Pittsburgh Elevator* to allow recovery from the State's insurance for injuries resulting from the provision of emergency services by the State and/or its employees is entirely consistent with the Legislature's express preservation of an individual's recovery rights. By permitting an individual to recover from the State's insurance coverage, the public treasury remains protected while the individual, him/herself, retains the "right . . . to receive benefits or compensation to which he or she would otherwise be entitled . . . ." W. Va. Code § 15-5-11(a). Therefore, we hold that W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009) expressly preserves an individual's right "to receive benefits or compensation to which he or she would otherwise be entitled under . . . any other law" and operates to permit an individual to maintain a cause of action against the State and/or its employee(s) to recover for injuries allegedly caused by the provision of emergency services where the emergency services are provided by the State or by an emergency service worker who is an employee of the State and the recovery sought is confined "to the limits of the State's liability insurance coverage."

15

Syl. pt. 2, in part, *Pittsburgh Elevator*, 172 W. Va. 743, 310 S.E.2d 675.[6]  Applying this holding to the facts of this case, we conclude that the circuit court correctly permitted Mr. Belcher to maintain his cause of action against Mr. Jackson and the DOH for the injuries he allegedly sustained during Mr. Jackson's provision of emergency services, and, further, that the circuit court correctly upheld its ruling.  Therefore, we affirm the circuit court's orders.

---

[6]Our review of the law of other jurisdictions indicates that W. Va. Code § 15-5-11(a) (2006) (Repl. Vol. 2009) is a unique statute insofar as only one other state, Arkansas, has enacted a statute that expressly provides immunity to emergency service workers *and* preserves an individual's recovery rights.  *See* Ark. Code Ann. § 12-75-128 (West 2009). While the preservation of rights language of both our statute and the Arkansas statute is similar, the language employed by the Arkansas Legislature is more restrictive insofar as it does not preserve the recovery rights afforded to an individual under "any other law" as does our statute.  *Compare* Ark. Code Ann. § 12-75-128(d) ("The provisions of this section shall not affect the right of any person to receive benefits to which he or she would otherwise be entitled to under this chapter, under the Workers' Compensation Law, § 11-9-101 et seq., or under the retirement system laws of Arkansas nor the right of any such person to receive any benefits or compensation under any act of Congress.") *with* W. Va. Code § 15-5-11(a) ("This section does not affect the right of any person to receive benefits or compensation to which he or she would otherwise be entitled under this article, chapter twenty-three of this code, any Act of Congress or any other law.").  Moreover, while several jurisdictions have considered whether a city or county providing emergency services has waived immunity up to the limits of its liability insurance, only one jurisdiction has considered this issue in a context similar to the case *sub judice* regarding a *state's* provision of emergency services.  In *Pauley v. Reinoehl*, 848 A.2d 569 (Del. 2004), the Delaware Supreme Court determined that Delaware's emergency vehicle statute specifically waives sovereign immunity up to the amount of the State's insurance coverage.

16

**IV.**

**CONCLUSION**

For the foregoing reasons, the March 7, 2012, and April 13, 2012, orders of the Circuit Court of Mingo County are hereby affirmed.

Affirmed.