No. 23–43, *David Duff, II v. Kanawha County Commission.*

**FILED**

**April 22, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Walker, Justice, concurring:

Petitioner David Duff, II, was working as a Kanawha County Deputy Sheriff when he suffered a compensable back injury while lifting a bomb detector robot out of a truck. Medical records show that before sustaining this injury, Mr. Duff received chiropractic treatment for back pain and imaging studies revealed evidence of degenerative disc disease. The claims examiner authorized lumbar fusion surgery; after Mr. Duff reached his maximum degree of medical improvement, he was evaluated to determine if he qualified for a permanent partial disability award. The examining physicians agreed that Mr. Duff had a 25% impairment for his lumbar spine but disagreed on whether this impairment rating should be apportioned between the compensable injury and Mr. Duff's preexisting back condition. I join the majority opinion, which holds that under West Virginia Code § 23-4-9b (2003), apportionment was not justified in this case because the evidence failed to establish "definitely ascertainable impairment" related to Mr. Duff's preexisting condition. I write separately to emphasize two points, and to express my respectful disagreement with the dissenting opinion.

1

My first point is that the Legislature used the word "impairment" *eight* times in West Virginia Code § 23-4-9b,[1] and we must presume that it was aware of the word's significance in workers' compensation law.[2] "Impairment" in this context is a medical assessment regarding the loss of use of a body part that impacts a claimant's ability to

---

[1] *See* W. Va. Code § 23-4-9b ("Where an employee has a definitely ascertainable *impairment* resulting from an occupational or a nonoccupational injury, disease or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one, article three of this chapter, the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting *impairment*. Nothing in this section requires that the degree of the preexisting *impairment* be definitely ascertained or rated prior to the injury received in the course of and resulting from the employee's employment or that benefits must have been granted or paid for the preexisting *impairment*. The degree of the preexisting *impairment* may be established at any time by competent medical or other evidence. Notwithstanding the foregoing provisions of this section, if the definitely ascertainable preexisting *impairment* resulted from an injury or disease previously held compensable and the *impairment* had not been rated, benefits for the *impairment* shall be payable to the claimant by or charged to the employer in whose employ the injury or disease occurred. The employee shall also receive the difference, if any, in the benefit rate applicable in the more recent claim and the prior claim.") (emphasis added).

[2] *See* Syl. Pt. 3, *Osborne v. U.S.*, 211 W. Va. 667, 567 S.E.2d 677 (2002) ("It is presumed the legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective, wherefore an interpretation of a statute which gives a word, phrase or clause thereof no function to perform, or makes it, in effect, a mere repetition of another word, phrase or clause thereof, must be rejected as being unsound, if it be possible so to construe the statute as a whole, as to make all of its parts operative and effective.") (quoting Syl. Pt. 7, *Ex parte Watson*, 82 W. Va. 201, 95 S.E. 648 (1918)).

function.[3] West Virginia is in the majority of jurisdictions that utilize the *American Medical Association Guides to the Evaluation of Permanent Impairment* when determining the level of a claimant's permanent impairment in a workers' compensation case.[4] Specifically,

> "[p]ermanent impairment" means a permanent alteration of an individual's health status and is assessed by medical means and is a medical issue. An impairment is a deviation from normal in a body part or organ system and its functioning. An injured worker's degree of permanent whole body medical impairment is to be determined in keeping with the determination of whole person permanent impairment as set forth in the applicable Guides. For the purposes of this Rule, the Guides' [*Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), as published by the American Medical Association] use of the term "whole person" impairment is the equivalent of the term "whole body" impairment.[5]

Our workers' compensation statutes provide that when a claimant has reached his maximum degree of medical improvement,[6] he is evaluated by a physician to

---

[3] 100 C.J.S. Workers' Compensation § 612 (March 2024 update); *see also* 82 Am. Jur. 2d Workers' Compensation § 357 (Feb. 2024 update) ("It has been held that in the workers' compensation context, the term 'impairment' is a medical assessment while the term 'disability' is a legal issue.").

[4] 1 Arthur Larson, Lex K. Larson, Thomas A. Robinson, *Larson's Workers' Compensation* § 90.03 at 90-7 (Rev. Ed. 2023) (hereafter *Larson's*).

[5] W. Va. C.S.R. § 85-20-3.10 (2006).

[6] *See* W. Va. Code § 23-4-7a(c) (2005) ("When the authorized treating physician concludes that the claimant has either reached his or her maximum degree of improvement or is ready for disability evaluation, or when the claimant has returned to work, the (continued . . .)

determine whether he is entitled to permanent partial disability benefits.[7]  To qualify for a permanent partial disability award, a claimant must submit competent evidence to show whole body medical impairment under the *AMA Guides*.  The examining physicians in this case agree that Mr. Duff has a whole person impairment of 25% under the *AMA Guides* for his diagnosis of lumbar sprain, status post L3-L4 fusion surgery, which places him in Category V of Rule 20.

The only issue here is whether apportionment of benefits is appropriate under West Virginia Code § 23-4-9b considering Mr. Duff's preexisting symptomatic conditions.  And that question turns on whether competent medical evidence shows preexisting ascertainable impairment.  As one court explained, "[s]omething other than a pre-existing medical condition must be shown in order to invoke the provisions relating to apportionment.  Asymptomatic conditions or even symptomatic conditions that have not had a demonstrable adverse impact on the claimant's wage-earning capacity, even if

---

authorized treating physician may recommend a permanent partial disability award for residual impairment relating to and resulting from the compensable injury[.]").

[7] *See* W. Va. Code 23-4-6(i) (2005) (providing, in part, that "with the exception of those injuries provided for in subdivision (f) of this section [when injury results in the total loss by severance of body part(s)] . . . the degree of permanent disability other than permanent total disability shall be determined exclusively by the degree of whole body medical impairment that a claimant has suffered. . . . The workers' compensation commission shall adopt standards for the evaluation of claimants and the determination of a claimant's degree of whole body medical impairment. Once the degree of medical impairment has been determined, that degree of impairment shall be the degree of permanent partial disability that shall be awarded to the claimant. . . .").

4

proven, do not require an apportionment of benefits."[8]  Under West Virginia Code § 23-4-9b, any preexisting impairment does not have to be "definitely ascertained or rated *prior to*" the compensable injury; the degree of the impairment "may be established at any time by competent medical or other evidence."[9]  But it must be "definitely ascertainable[.]"[10]  Simply stated, to be apportionable, "an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident."[11]  Other courts have recognized that under the "*AMA Guides*, apportionment is only appropriate when a prior impairment, whether occupational or nonoccupational, has been sufficiently identified, treated, or evaluated to be rated as a contributing factor in the subsequent disability."[12]

Bruce Guberman, M.D., explained in his report that "there is no objective medical, logical rationale for determining any specific portion of the impairment to

---

[8] *Entergy Mississippi, Inc. v. Robinson*, 777 So.2d 53, 57 (Miss. Ct. App. 2000).

[9] W. Va. Code § 23-4-9b (emphasis added).

[10] *Id.*

[11] *Larson's* § 90.04[3] at 90-10.

[12] *Askew v. Indus. Claim Appeals Off. of the State of Colo.*, 927 P.2d 1333, 1338 (Colo. 1996) (footnote omitted); *see also Whitney v. Pregis Corporation*, 175 A.D.3d 1731 (N.Y.S. 3d Dep't 2019) (stating that, as a general rule, apportionment between a compensable injury and a preexisting condition for the purpose of a workers' compensation claim is not applicable as a matter of law when the claimant was able to effectively perform his job duties at the time of the work-related accident despite the preexisting condition).

apportion for any preexisting conditions." Dr. Guberman noted that the preexisting condition did not interfere with Mr. Duff's activities of daily living, nor did it interfere with his ability to work. Dr. Guberman is the only physician who addressed the issue of apportionment using the *AMA Guides*.[13]

On the other hand, Prasadarao B. Mukkamala, M.D., stated in his report that Mr. Duff's 25% whole person impairment "is resulting from the preexisting degenerative spondyloarthropathy as well as the compensable injury" and apportioned 12% to the preexisting condition. But Dr. Mukkamala offers no explanation for how he arrived at the 12% whole person impairment rating; it was an arbitrary assessment lacking foundation in the *AMA Guides*. He does not identify any medical records that predate the compensable injury that document range of motion findings or symptoms of numbness or weakness due to low back pain that would show preexisting impairment. The dissent references medical records—apparently unreviewed by Dr. Mukkamala but discussed by the Workers' Compensation Board of Review—that demonstrate, at best, a preexisting condition with so little objective evaluative evidence that impairment cannot be ascertained at all, much less to what degree. Because the employer failed to offer competent, objective medical evidence in this case to support apportionment under West Virginia Code § 23-4-9b, the

---

[13] David L. Soulsby, M.D. also evaluated Mr. Duff, at the request of the employer, but the Workers' Compensation Board of Review disregarded this report under W. Va. C.S.R. § 85-20-66.2 because Dr. Soulsby did not submit a completed back examination form. So, his report should not factor into this Court's analysis.

majority properly holds that Mr. Duff is entitled to the full 25% permanent partial disability award in this claim.

Second, I emphasize that states enact apportionment statutes with the intent to relieve the employer of the burden of paying for disabilities that are not attributable to the work-related accident for which the entitlement to workers' compensation arises. Even though West Virginia Code § 23-4-9b does not identify which party bears the burden of proof when it comes to apportionment, the majority rightly places that burden on the employer, as the proponent of the benefit reduction. As the majority notes, other "[c]ourts have offered several convincing rationales for allocating the burden of proof in an apportionment case to the employer[.]"[14] Apportionment is akin to an affirmative defense, and the employer has the burden of proof to establish entitlement to the reduction of the claimant's permanent partial disability benefits.[15]

Finally, I note my respectful disagreement with the dissent's conclusion that "competent medical evidence in the record demonstrates both the presence and degree of

---

[14] Majority opinion at footnote 6 (citing cases).

[15] *See generally*, *Rowe v. Sisters of Pallottine Missionary Soc'y*, 211 W. Va. 16, 23, 560 S.E.2d 491, 498 (2001) ("In any action—medical malpractice or otherwise—the defendant carries the initial burden of proving an affirmative defense such as comparative negligence."); *see also Giaimo v. Fla. Autosport, Inc.*, 154 So. 3d 385, 387 (Fla. Dist. Ct. App. 2014) ("Apportionment is an affirmative defense, and the [employer] had the burden of proof to establish entitlement to the reduction in benefits.").

[Mr. Duff's] definitely ascertainable impairment."  While the dissent correctly contends that West Virginia Code § 23-4-9b states that "[t]he degree of the preexisting impairment may be established at any time by competent medical or other evidence[,]" I disagree that the evidence adduced here established the impairment.  The medical evidence shows the *presence* of Mr. Duff's preexisting symptomatic back problems, along with a goal of improving his range of motion.  But there is no competent evidence that establishes the *degree of impairment* related to his preexisting condition.  It was simply not sufficiently documented to be rated and ascertained under the *AMA Guides* when he was examined by physicians in this claim.